Ruth Cook Blue Living Trust v. Blue, 2011 NCBC 9.

STATE OF NORTH CAROLINA

COUNTY OF WATAUGA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
07 CVS 222

| | |
|---|---|
| IN THE MATTER OF:<br><br>THE RUTH COOK BLUE LIVING TRUST, Dated August 26, 1996; James M. Deal, Jr.; Linda C. Dalton and Sarah C. Isaacs, Trustees,<br><br>               Petitioners<br><br>       v.<br><br>Clifton N. Blue, Jr.; Peter Blue Crane; Henry McCoy Blue; William F. Blue, Jr.; Katherine M. Blue; William F. Blue; Mrs. Gary B. Peterson; Richard F. Blue, Jr.; John Tyler Blue; Mrs. Gary B. Blue; Jana Blue; Robert G. Blue and William A. Crane,<br><br>               Respondents | **OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, dated May 31, 2007, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."); and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, is before the court upon the Respondents' Second Motion for Partial Summary Judgment ("Respondents' Motion"), pursuant to Rule 56, North Carolina Rules of Civil Procedure ("Rule(s)"), and the Petitioners' Motion for Summary Judgment on Respondents' Counterclaim[1] ("Petitioners' Motion"), also pursuant to Rule 56; and

---

[1] As amended.

THE COURT, after considering the arguments, briefs and submissions of counsel and appropriate matters of record, as discussed *infra*, CONCLUDES that both the Respondents' Motion and Petitioners' Motion should be GRANTED.

*Mayer Brown, LLP by Mary K. Mandeville, Esq. and C. Wells Hall, Esq. for Petitioners.*

*Robinson, Bradshaw and Hinson, PA by Edward F. Hennessey, IV, Esq. for Respondents.*

*Jana Blue, pro se.*

Jolly, Judge.

A.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]

[1]     This is a civil action for declaratory relief with regard to the Ruth Cook Blue Living Trust (the "Trust"), which was established on August 26, 1996.

[2]     By way of this action, the Trustees have asked this court to determine the value at which certain equity stock in the Aberdeen and Rockfish Railroad Company (the "Railroad"), a short line railroad company held by the Ruth Cook Blue Living Trust (the "Trust"), is required to be offered for sale to individual members of a certain group of Railroad shareholders (the "Blue Family"), who are before the court as Respondents.

[3]     In an Order of May 20, 2008 (the "May 20 Order"), this court concluded that the accounting firm of Bowers & Company CPAs, PLLC ("Bowers") is the accounting firm whose value opinion shall be controlling in determining the price at

---

[2] It is not proper for a trial court to make findings of fact in determining a motion for summary judgment under Rule 56. However, it is appropriate for a Rule 56 order to reflect material facts that the court concludes exist and are not disputed, and which support the legal conclusions with regard to summary judgment. *Hyde Ins. Agency v. Dixie Leasing*, 26 N.C. App. 138, 142 (1975). Unless otherwise indicated herein, the material facts reflected in paragraphs 8, 9, 16, 17 and 26 of this Opinion and Order exist, are undisputed and are pertinent to the issues raised by the parties' respective Motions.

which Ruth Cook Blue's shares of Railroad stock are to be offered for sale to the Blue Family.

[4]     However, in its May 20 Order, the court did not address whether any other valuations by Bowers would be controlling as to the price at which the Railroad shares are to be offered to the Blue Family.  Instead, this court set forth parameters for calculating the value of the Railroad stock, concluding specifically that:

a.      Paragraph 8.01 of the Trust Agreement limits to the Blue Family the group of persons to whom shares of the Railroad must be offered.  They already are Railroad shareholders.  The Trust mandate does not contemplate the Railroad stock being offered for sale in the general marketplace.

b.      The intent of the late Ruth Cook Blue was that the word "value," as reflected in paragraph 8.01 of the Trust Agreement, means "fair market value" of the Railroad shares as the same would be viewed by the Trust – as prospective seller – and the Blue Family – as prospective purchasers.

[5]     By way of the Respondents' Motion, the Respondents seek an order declaring that $420 per share, a value calculated by Bowers, shall be the price at which Petitioners must offer for sale to Respondents the shares of common stock in the Railroad.

[6]     By way of Petitioners' Motion, Petitioners seek dismissal of Respondents' Counterclaim alleging a breach of fiduciary duty by the Trustees.

B.

DISCUSSION

1.

Respondents' Motion

[7]     In its May 20 Order, this court concluded that Bowers' value opinion shall be controlling with regard to the price at which Ruth Cook Blue's shares of Railroad stock are to be offered to the Blue Family.  In keeping with the order, the court directed a determination by Bowers of the value of the Railroad shares in the context of those shares being offered in a direct sale only to the Blue Family.

[8]     Thereafter, the Respondents requested that Bowers provide a valuation of the Railroad stock "in the context of being offered in a directed sale only to the Blue Family" as of May 7, 2005, and December 31, 2004, the valuation dates Respondents contend are contemplated by the Trust, in order to determine an appropriate price.  On October 20, 2008, Bowers provided its report, in which it valued the Railroad shares at $420 per share for each of these two dates.

[9]     Petitioners, seeking their own valuations of the Railroad shares in the context of a direct sale to the Blue Family, requested valuations by Bowers as of March 29, 2007, the date of Petitioners' initial offer to Respondents for their purchase of Railroad shares, and August 31, 2008.  Before these valuations were provided, Petitioners cancelled their request for further valuations by Bowers because they stated disagreement with the methodology by which Bowers previously had calculated the share valuation for Respondents.

[10]   Respondents' Motion now seeks to enforce the Bowers valuation for shares of Railroad stock.  Specifically, they ask the court to:

a.   Declare $420 to be the per-share price at which Petitioners must offer for sale to the Blue Family the shares of common stock in the Railroad held by the Trust;

b.   Direct Petitioners to extend to each Blue Family Respondent, no later than five (5) calendar days from the date of the court's order, a written offer of sale of Railroad shares at the $420 per-share price; and

c.   Direct that any amounts paid by Blue Family Respondents to purchase Railroad shares pursuant to such order shall be (i) tendered to the Clerk of Superior Court of Watauga County, (ii) considered received by Petitioners upon receipt by the Clerk and (iii) disbursed based on subsequent proceedings and orders in this matter.

[11]   In support of their Motion, Respondents argue that the Bowers valuation is correct because it was Mrs. Blue's intent that her Railroad shares be valued "as of" December 31 of the year preceding her death.  They further argue that even if December 31 is not the valuation date, the latest possible valuation date would be May 7, 2005, the date of Mrs. Blue's death.  Because the Bowers valuation establishes the value of the Railroad shares at $420 per share at each of these dates, Respondents contend it is not necessary for the court to determine which of the two dates most fully corresponds with Mrs. Blue's intent.

[12]   In their response, Petitioners argue that the $420 valuation, while performed by Bowers, does not meet the requirements of and is not in compliance with

either the court's May 20 Order or Ruth Cook Blue's intent.  To that end, Petitioners argue that the Trustees have consistently testified that it was Mrs. Blue's intention that her Cook family relatives named as beneficiaries in paragraph 8.01 of the Trust (the "Residuary Beneficiaries") receive "full value" from the sale of the Railroad stock.[3]  They contend that the Bowers valuation would not achieve that "full value" standard and therefore that to use the Bower's valuation would be to frustrate Mrs. Blue's testamentary intent.

[13]    In its May 20 Order, the court determined that:

a.    By its own terms, paragraph 8.01 of the Trust Agreement limits the group of persons to whom shares of the Railroad must be offered to the Blue Family, who already are shareholders.  The Trust mandate does not contemplate the Railroad stock being offered for sale in the general marketplace.

b.    The intent of Ruth Cook Blue was that the word "value," as reflected in paragraph 8.01 of the Trust Agreement, means "fair market value" of the Railroad shares as the same would be viewed by the Trust, as prospective seller, and the Blue Family, as prospective purchasers.

[14]    "When called upon to interpret a trust agreement or other contract courts seek to ascertain the intent of the parties and, when ascertained, give effect thereto, unless forbidden by law." *Callaham v. Newsom*, 251 N.C. 146, 149 (1959).

[15]    To determine Ruth Cook Blue's intent, the court must look to the entire trust instrument and the surrounding circumstances.  The intent of one who creates a trust is to be determined by the language chosen to convey the settlor's thoughts, the

---

[3] *See* Petitioners' Response in Opposition to Respondents' Second Motion for Partial Summary Judgment, Tabs 1 and 2.

purpose sought to be accomplished and the situation of the several parties to or benefited by the trust. *Id.*; *Wachovia Bank of North Carolina, N.A. v. Willis*, 118 N.C. App 144, 147 (1995) ("We derive the settlor's intent from the language and purpose of the trust, construing the document as a whole.").

[16]    The 2008 Bowers valuation meets the requirements of the May 20, 2008 Order. In calculating the $420 valuation for the Railroad stock, Rick Tidd ("Tidd"), the Bowers employee responsible for the valuation, acknowledged that he was "utilizing fair value as defined by Revenue Ruling 59-60 . . . trying to come to a price that a hypothetical purchaser and a seller would come to with those [sic] knowledge, not with specifics to this particular person . . . ."[4]

[17]    Seizing upon Tidd's explanation of how he calculated the $420 valuation, Petitioners argue that Tidd did not take into consideration that the prospective purchaser, the Blue Family, already owned a controlling interest in the Railroad. According to Petitioner, had Tidd considered the Blue Family to be a single purchaser that already had a controlling interest, then the definition of fair market value used for calculating price would have been different. Tidd, however, testified in his deposition that he was correct in viewing the Respondents as a "group of persons," because the May 20 Order dealt with the valuation of Railroad shares to individual members of a certain group of shareholders. [5]  In the May 20 Order, the individual members were collectively defined as the "Blue Family," but still constituted individual purchasers given

---

[4] Respondents' Second Motion for Partial Summary Judgment, Exhibit B 76.
[5] *Id.*, 78-79.

an option to purchase – not a single prospective purchaser with a controlling interest as Petitioners assert.[6]

[18]    Petitioner also makes the argument that Bowers' method of calculation[7] does not comport with Mrs. Blue's intent as to the value of the Railroad stock.  These arguments as to the correctness of the Bower's valuation, however, are not relevant when considered in light of the Trust Agreement language and the court's May 20 Order.[8]

[19]    The intent of Ruth Cook Blue was that the word "value," as reflected in Paragraph 8.01 of the Trust Agreement, means "fair market value" of the Railroad shares as the same would be viewed by the Trust, as prospective seller, and by the Blue Family, as prospective purchasers.  Relying on this court's earlier order, Bowers calculated a valuation in accordance with Ruth Cook Blue's testamentary intent.

[20]    Therefore, the court is forced to conclude there exist no genuine issues of material fact with regard to whether the Bowers opinion on fair market value of the Railroad shares is controlling; and Respondents' Motion should be GRANTED.

2.

Petitioners' Motion

[21]    Respondents' Counterclaim seeks to assert that they are beneficiaries of the Trust with regard to whom Petitioners have breached their fiduciary duty.

---

[6] May 20 Order 2.

[7] Specifically, Petitioners' contend that the capitalization rate used in the Bowers valuation is fatally flawed for a list of reasons not discussed in this order.  Petitioners' Response in Opposition to Respondents' Second Motion for Partial Summary Judgment 10-11.

[8] In its May 20 Order, this court held that criticism of Bowers' valuation methodology would be of limited probative value, if it would be admissible at all, because Ruth Cook Blue is deemed to have embraced the expertise of Bowers in valuing the Railroad stock.

[22]   Petitioners' Motion seeks summary judgment in their favor on Respondents' Counterclaim on the grounds that Respondents are not beneficiaries of the Ruth Cook Blue Living Trust, and therefore Petitioners do not owe them a fiduciary obligation with respect to the administration of the Trust.

[23]   In support, Petitioners argue that while the Trust Agreement gives Respondents the option to purchase the Railroad stock from the Trust, it does not entitle them to distributions of principal or income from the Trust and the Respondents are not listed beneficiaries under the terms of the Trust Agreement.  They argue that the Respondents therefore are not "beneficiaries" of the Trust as defined under G.S. 36C-1-103.

[24]   The Respondents argue that the Trustees have fiduciary duties to them regardless of whether they are considered defined beneficiaries.  First, Respondents consider themselves to be beneficiaries because a specific opportunity exists for them to purchase Railroad shares under the Trust.  Second, Respondents also contend that Petitioners' Motion is without merit because even if they are not true beneficiaries, the North Carolina Uniform Trust Code does not limit breach of fiduciary obligations to beneficiaries alone.  Under this theory, Respondents argue that the Trustees are charged with the duty of offering to Respondents the option to purchase the Railroad shares pursuant to the Trust requirements; and, as a result, may still be in violation of a duty owed under the Trust if they have not fulfilled that duty.  They contend that such a violation by the Trustees should be actionable by Respondents.  They cite no case law in support of their argument in this regard.

[25]    Respondents' argument is misplaced.  Although G.S. 36C-10-1001(a) provides that any violation by a trustee of a duty the trustee owes under a trust constitutes a breach of that trust, it does not create a fiduciary duty as to those who are not beneficiaries.  *See Scott v. United Carolina Bank*, 130 N.C. App. 426, 432 (1998).

[26]    Paragraph 8.02 of the Trust specifically identifies Trust beneficiaries, listing fifteen individuals, none of whom are members of the Blue Family.  These fifteen members are Ruth Cook Blue's siblings and their spouses, her siblings' children and her siblings' grandchildren.  The Trust itself defines beneficiary as "a person who pursuant to the terms of the trust is or in the future may be eligible to receive income or principal from the trust."[9] These individuals, as beneficiaries, are in an enforceable fiduciary relationship with the Trustees.  However, no such duty is owed to the non-beneficiary Blue Family.

[27]  Therefore, the court is forced to conclude there exist no genuine issues of material fact with regard to whether the Respondents are beneficiaries of the Trust who are owed a fiduciary duty by the Trustees; and Petitioners' Motion should be GRANTED.

NOW THEREFORE, based upon the foregoing, it is ORDERED that:

[28]    Respondents' Second Motion for Partial Summary Judgment is GRANTED.  Accordingly, no later than five (5) calendar days from the date of this Opinion and Order, the Trustees of the Ruth Cook Blue Living Trust shall extend to each Blue Family Respondent a written offer of sale of stock in the Aberdeen & Rockfish Railroad Company as provided in Section 8.01 of the Trust.  The offering price of such stock shall be at $420 per share.

---

[9] Respondents' Second Motion for Partial Summary Judgment, Exhibit D.

[29]     Petitioner's Motion for Summary Judgment with regard to Respondents' Counterclaim is GRANTED.  Accordingly, said Counterclaim is DISMISSED.

[30]     At 11:00 a.m., on Friday, April 1, 2011, at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a hearing and status conference relative to this action for the purpose of determining any remaining issues between the parties.

This the 8th day of March, 2011.